UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL ROBERT HISCOX,<br><br>　　　　　Petitioner,<br><br>　　vs.<br><br>MIKE MARTEL, Warden,<br><br>　　　　　Respondent.<br>　　　　　　　　　　　　　　　　／ | No. C 09-3477 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On November 19, 2003, a jury found petitioner guilty on eleven counts of lewd and lascivious conduct, *see* Cal. Penal Code § 288(a). For each count the jury found true the allegations that the victim was under age 14 and that petitioner had substantial sexual conduct with the victim, *see* Cal. Penal Code § 1203.066 (8), and that petitioner committed the offenses against multiple victims, *see* Cal. Penal Code § 667.61(b)(c)(7) and (e)(5). Respondent's Exhibit ("Resp. Exh.") A2 at 565-576, 582-586. On January 12, 2004, the court sentenced petitioner to a total term of 165 years to life in prison, consisting of consecutive terms of 15 years to life on each count. Resp. Exh. A3 at 746-47, 751-53. On January 31, 2006, the California Court of Appeal affirmed the conviction but remanded for resentencing. Resp. Exh. F. A petition for review was denied by the California Supreme

Court on May 17, 2006, but before the California Supreme Court acted on the petition for review, the superior court resentenced petitioner to a total term of 28 years. Resp. Exh. H (Exhibit A).

On June 8, 2007, petitioner filed a habeas petition that was granted by the California Court of Appeal,[1] and the case was remanded to the superior court for resentencing. *Id.* at 2. On October 25, 2007, the superior court again resentenced petitioner to a total term of 28 years, consisting of the aggravated term of eight years on count one, followed by two years consecutive on each of the remaining ten counts. Resp. Exh. B3 at 60. On August 12, 2008, the Court of Appeal affirmed the judgment. Resp. Exh. O (appendix), *People v. Hiscox*, 2008 WL 3414964 (Cal. App. 1 Dist.). The California Supreme Court denied a petition for review on October 22, 2008. Resp. Exh. P. Petitioner filed a habeas corpus petition in the California Court of Appeal that was summarily denied on February 13, 2009, and a petition for review was summarily denied by the California Supreme Court on April 22, 2009. Resp. Exh. Q (Appendix), R.

The relevant facts, as described by the California Court of Appeal, can be summarized as follows: Hiscox was convicted for sexually molesting three children over the course of several years from 1992 through 1996. Resp. Exh. O at 1. The molestations occurred while Hiscox was living with the children and their mother and acting as a father figure for the children. *Id.* Hiscox was originally sentenced to serve a total term of 165 years in prison, but the case was remanded for resentencing under the law as it existed prior to November 30, 1994. *Id.* at 2. The trial court resentenced Hiscox while a petition for review was pending in the California Supreme Court. *Id.* The petition for review was denied but, because the trial court resentenced Hiscox before it had regained jurisdiction of the case, a habeas petition was granted by the Court of Appeal and the case was again remanded to the trial court for resentencing. *Id.* On the second resentencing, Hiscox was sentenced to a total term of 28 years, consisting of the aggravated term of eight years on

---

[1] The petition was granted because the superior court resentenced petitioner before it had regained jurisdiction of the case.

2

count one, followed by consecutive two-year terms on the remaining counts. *Id.* The trial court found that the aggravated term was appropriate on count one because Hiscox assumed a fatherly role with the three victims and violated their trust and the trust of their mother in gaining access to the victims. *Id.* at 3. The court found that two years, which was one-third the midterm of six years, to be served consecutively, was appropriate for the remaining counts. *Id.* The court acknowledged that Hiscox's lack of a prior criminal record was a mitigating factor, but that the aggravating factor regarding his violation of trust after assuming a fatherly role with the victims, outweighed the mitigating factor. *Id.*

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes

3

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). However, when presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not a "de novo review of the constitutional issue;" rather, it is the only way a federal court can determine whether a state-court decision is objectively unreasonable where the state court is silent. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were violated by admission of a confession obtained through coercion and promises of leniency; (2) his due process rights were violated when the trial court failed to allow testimony on the voluntariness of the confession; (3) the confession was not properly authenticated; (4) hearsay evidence was improperly admitted; (5) his arrest was improper; (6) the prosecutor committed misconduct; (7) the sentence imposed violated *Cunningham v. California*, 549 U.S. 270, 293-94 (2007); (8) his trial counsel was ineffective; and (9) his

4

appellate counsel was ineffective. Petition for Writ of Habeas Corpus ("Hab. Pet.") 6a-6d. The court dismissed claims (3) and (4) because both are state law claims and cannot form the basis for federal habeas relief, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law); and claim (5) because violations of the Fourth Amendment cannot be grounds for relief in a habeas proceeding. *See Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976) (no federal habeas review of Fourth Amendment claims unless state did not provide opportunity for full and fair litigation of those claims). Petitioner's remaining claims will be addressed on the merits.

**I.      Confession/Evidentiary Hearing**

   a.      Confession

Petitioner claims that a confession he made during a pretext call with Theresa C. was improperly admitted because it resulted from promises of leniency. Hab. Pet. 1. The Court of Appeal summarized the telephone conversation as follows:

> During the investigation of the crimes, Deputy Diana Freese asked Theresa C. to come to the sheriff's office and make a "pretext call" to Hiscox. The call was placed from Freese's office, and tape recorded, for the purpose of obtaining incriminating statements from Hiscox.
>
> Theresa C. began by asking Hiscox about her three sons' report that he had molested them. She was particularly concerned about C., who was having psychological problems, and asked Hiscox to tell her specifically what he had done. After several denials, Hiscox said "I don't know what I can even talk to you about. Law Enforcement's already contacted me. They're investigating me." Hiscox remained noncommittal, and Theresa C. said, referring to C.: "Give me a f—ing break. He's embarrassed. He's humiliated. He feels like he's gonna be called a fagot (*sic*). I mean, Jesus Christ, you're their dad. It's time to f—ing pull it together and help them, you know, get over it. Screw Law Enforcement. We need to get this...I need my kids ok." Hiscox said, "I can't help them if they throw me in jail." Theresa C. replied: "Well, they're not gonna throw you in jail if you help them. F—them. We'll just get them out of the picture. I just need him to go to...I just need...I just need [C.] to be ok."
>
> Hiscox remained reluctant. Theresa C. said: "It's just us. I don't want Social Services or anybody else in my life. I just want [C.] not to kill himself, ok." Hiscox commented, "I need not to go to jail, so I can help." A little later, the following exchange occurred:
>
> "[Theresa C.]          Well, they [the boys] haven't said anything yet. They don't have an appointment yet."

5

> "H[iscox]          They haven't said anything to who yet?  They told...They called the Sheriff."
>
> "[Theresa C.]     They talked to a Detective, which is an initial report.  They haven't done...There's like, I guess, there's something called a CAST screening or something.  And they haven't done that yet.  I haven't talked to the Detective to make the determination.  I haven't been home yet."
>
> "H[iscox]          Mm hmm."
>
> "[Theresa C.]     ...enough...Nobody's gonna do anything unless I want them to.  And alls I want is for [C.] to be ok and for [D.] to be ok.  I know the Detective got called. I talked to him."
>
> Eventually, Hiscox began making admissions.  He remained suspicious, however, saying at one point "Theresa, I don't know if you're calling me from the Police Station.  I don't know anything."  He also told Theresa C., "Theresa, everything I'm telling you, can send me to prison forever."  Toward the end of the conversation, there was this exchange:
>
> "H[iscox]          Alls I know is I've told you now and you're gonna send me to jail with it.  And I'm really sorry and I want to help [C.], but I don't know what to do."
>
> "[Theresa C.]     Well...Oh, God."
>
> "H[iscox]          But it's all I can do to help you is to tell you so I did."

Resp. Exh. F 3-4. (footnotes omitted).

On direct appeal petitioner argued that the trial court erred by granting the prosecution's motion to admit the tape of the phone call into evidence and denying his motion to suppress the evidence.  *Id.* at 4.  The Court of Appeal concluded that the statements were properly admitted, finding that Hiscox was not motivated to confess by an implied promise of leniency made by Theresa C., but rather by a desire to help her and her sons deal with the problems caused by his actions.  *Id.* at 4-5.  The court determined that Hiscox knew that his statements exposed him to imprisonment, as he expressed concern about the penal consequences of his admissions before, during, and after he made the statements.  *Id.* at 5.  Under the circumstances, the Court of Appeal concluded that Hiscox's decision to confess was made voluntarily and was not coerced by an implied promise of leniency.  *Id.*

To be admissible, a confession must be "free and voluntary: that is, must not be

6

extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *See Brady v. United States*, 397 U.S. 742, 753 (1970) (citation omitted). A court on direct review is required to determine, in light of the totality of the circumstances, "whether a confession [was] made freely, voluntarily and without compulsion or inducement of any sort." *See Withrow v. Williams*, 507 U.S. 680, 689 (1993). (internal quotation marks and citation omitted).

In cases involving psychological coercion, the question is whether, in light of the totality of the circumstances, the defendant's will was overborne when he or she confessed. *See Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Circuit 2011). The interrogation techniques of the officer must shock the conscience so as to warrant a federal intrusion into the criminal processes of the States. *See Moran v. Burbine*, 475 U.S. 412, 433–34 (1986). Coercive police activity is a necessary predicate to finding that a confession is involuntary within the meaning of the Due Process Clause, and the state of mind of the police is irrelevant when making this determination. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Moran*, 475 U.S. at 423. However, police deception alone does not render a confession involuntary. *See United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

Petitioner contends that the confession made during the pretext call with Theresa C. was involuntary because it was induced by promises of leniency and by warnings that her son would inflict harm upon himself and petitioner if he did not comply with her demands for information. Hab. Pet. 5-8.

Assuming *arguendo* that Theresa C. was acting as an agent of law enforcement throughout the phone conversation, the totality of the circumstances indicate that petitioner's will was not overborne when he confessed to the crimes. Theresa C. described in great detail the pain that she and the boys were going through, and implored petitioner to tell her what he had done so that she would at least know the source of their suffering. Resp. Exh. A1 at 2-6. Although petitioner was reluctant to speak due to the criminal investigation, he eventually succumbed to Theresa C.'s pleas for help, and admitted to sexually molesting her boys on numerous occasions. It's clear that petitioner was moved

7

by her entreaties, even while being aware of the risk he was exposing himself to. *Id.* at 19. Theresa C.'s so-called promises of leniency amounted to nothing more than proclamations of how little she cared about the criminal investigation as compared to the well-being of her children. *Id.* at 5-7. Although Theresa C. was acting in concert with the Sheriff's Department, her statements and tone were that of a concerned mother, and not of a law enforcement officer trying to overcome the will of the defendant through coercive or deceptive means. It is clear from the record that petitioner's admissions arose out of his desire to help Theresa C. and the children in whatever small way that he could, and were not coerced by insincere promises of leniency or fabricated warnings of harm that could befall the boys. In view of Theresa C.'s motives and her concern regarding the effects of the abuse that the victims suffered at the hands of petitioner, the manner in which she extracted information hardly "shocks the conscience" of this court. *See Moran*, 475 U.S. at 433–34. Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *See Harrington*, 131 S. Ct. at 784.

The California Court of Appeal's determination that petitioner's confession was properly admitted was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the state court record. *See* 28 U.S.C. § 2254(d).

   b. <u>Evidentiary Hearing</u>

Petitioner contends that the trial court improperly denied his request for a testimonial hearing to determine the admissibility of his confession. Hab. Pet. 15. The facts surrounding this claim are as follows: A pretrial in limine hearing was held to address the prosecution's motion to admit petitioner's confession and the defense motion to suppress the same. Resp. Exh. B1 at 27-36. Based on its review of the parties' points and authorities and an audiotape of the phone call, the court announced a tentative decision to admit the confession. *Id.* at 27. Defense counsel argued that the court could not make an informed decision on the tape's admissibility without allowing him to cross-examine Theresa C. and Deputy Freese regarding the planning, training, and instructions involved in

preparing for the phone call. *Id.* at 27-35. Counsel tried to make the point that, because Theresa C. acted as a government agent, she may have made improper threats or offers that rendered the confession inadmissible. *Id.* The prosecution argued that the statements were made voluntarily and as a result of the defendant's own conscience. *Id.* at 35-36. The defendant was not in custody and made his confession at the end of a phone call which he could have terminated at any time. *Id.* at 35. Theresa C. made no threats or promises, and the defendant had no reason to believe that she had any legal authority over him. *Id.* In fact, defendant repeatedly acknowledged that he could go to jail for his statements depending on what she decided to do with the information. *Id.* After hearing the arguments, the court found that, under the totality of the circumstances, the taped statement was voluntary and admissible, and granted the prosecution's motion to admit the confession and denied the defense motion to suppress the same. *Id.* at 36.

After the trial began, defense counsel renewed his objection to the admission of the confession and requested a hearing pursuant to California Evidence Code § 402 to determine whether Theresa C. made an offer of leniency to the defendant that rendered his confession involuntary. Resp. Exh. B1 at 170-73. The court made it clear that it had already reviewed the tape and the points and authorities submitted by the parties, and would not be swayed by any further testimony. *Id.* at 173-74. Defense counsel argued that Theresa C. clearly made an offer that induced petitioner's incriminating statements. *Id.* at 175-76. The court rejected the argument, finding that the statements were made voluntarily under the totality of the circumstances, and denied the request for a § 402 hearing. *Id.* at 176-77.

A defendant is constitutionally entitled to have the trial court determine whether a confession was freely and voluntarily given, and the trial judge's conclusion that the confession is voluntary must appear from the record with unmistakable clarity. *See Sims v. Georgia*, 385 U.S. 538, 543-44 (1967) *citing Jackson v. Denno*, 378 U.S. 368, 391-94 (1964).

Petitioner claims that the trial court's denial of his request for a testimonial hearing

prevented him from eliciting the material facts necessary for the court to make a proper determination on whether his confession was voluntary. Hab. Pet. 17-19. This contention lacks merit. Clearly established Supreme Court authority requires the trial court to determine that the confession was freely and voluntarily given, and that its conclusion in this regard appear from the record with unmistakable clarity. *See Sims*, 385 U.S. at 544. This is precisely what happened here. After hearing argument, reviewing the audiotape and considering the parties' points and authorities, the trial court made it clear that it had all the facts necessary to determine that petitioner's statements were made voluntarily, and that there was no need for additional testimony. Resp. Exh. B at 36, 173-74, 176-77. Nothing more was required.

The trial court's determination that a testimonial hearing was not necessary was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the state court proceedings. *See* 28 U.S.C. § 2254(d).

**II.    Prosecutorial Misconduct**

Petitioner claims that the prosecutor committed misconduct by offering false evidence, perjuring herself, suborning perjury, and misleading the court and defense counsel. Hab. Pet. 49. The substance of petitioner's claim is that the prosecutor and Deputy Freese did not truthfully identify the audiotape of the pretext call as accurate, and they colluded to offer the false evidence as genuine without disclosing that information to the court or to defense counsel. Hab. Pet. 52.

A conviction obtained through the use of testimony which the prosecutor knows or should know is perjured must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). The result is the same when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on a claim based on *Agurs/Napue*, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should

10

have known that the testimony was actually false, and (3) that the false testimony was material. *See United States v. Zuno–Arce,* 339 F.3d 886, 889 (9th Cir. 2003) (citation omitted).  In evaluating allegations of prosecutorial misconduct, this court considers whether the prosecution's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Hein v. Sullivan*, 601 F.3d 897, 912 (9th Cir. 2010). (citation omitted).  The court must conduct an independent review of the record to determine whether the California Supreme Court's decision denying relief on this claim is objectively unreasonable. *See Delgado*, 223 F.3d at 982.

Petitioner's claim of falsity relies on the fact that the conversation was interrupted due to the tape being turned over, leaving a small portion of the conversation that was not recorded or transcribed.  Petitioner's Traverse ("Pet. Trav.") at 46.  Petitioner argues that the prosecution, knowing of the interruption, sought to admit the tape as the "entire pretext call with no deletions," thereby offering false evidence and also suborning perjury of their witness, Deputy Freese, who testified under oath as to the contents of the recording. *Id.* Petitioner's claim lacks merit as there is no showing that the prosecution deliberately presented false evidence, or that anything material was omitted from the tape.  Side one of the tape ends in the middle of a statement from Theresa C. that she needs to know what happened to her kids.  Resp. Exh. A1 at 18.  The tape picks up on side 2 with Theresa C. stating that she is going to believe her children. *Id.*  All parties were aware of the reason for the interruption, and there is no indication that the portion of the conversation that was not recorded concerned whether petitioner's admissions were voluntary and reliable. *Id.* Petitioner's *Napue* claim therefore fails on the first prong as there was no false testimony concerning the authenticity of the tape or its contents and, in any case, there is no indication that the portion of the testimony that was not recorded had any material bearing on an issue in dispute.

Based on the court's independent review of the record, the state courts' decision denying petitioner's claim for relief is not objectively unreasonable. *See Delgado*, 223 F.3d at 982.

11

### III.     *Cunningham* Claim

Petitioner claims that the trial court's imposition of an upper term sentence on count one violated *Cunningham v. California*, 549 U.S. 270, 274, 288-290 (2007) because it was based on a factor not admitted to by him or found by a jury. Hab. Pet. 56. The jury found petitioner guilty on eleven counts of lewd and lascivious conduct in violation of California Penal Code § 288(a). At the second resentencing, the court found that the aggravated term of eight years was appropriate on count one, based on the fact that the defendant assumed a fatherly role with the three victims and violated their trust to commit the offense. Resp. Exh. B3 at 60. The Court of Appeal affirmed the sentence, finding that the trial court properly imposed the aggravated term under California's revised sentencing statute. Resp. Exh. O at 4.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *Blakely v. Washington*, 542 U.S. 296, 303 (2004), the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* (emphasis in original). Therefore "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *See Cunningham v. California*, 549 U.S. 270, 288-89 (2007). In *Cunningham*, the Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent that it contravenes "*Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *See id.* quoting *Apprendi*, 530 U.S. at 490.

The trial court's imposition of an upper term sentence on count one, based on facts found by the judge rather than the jury, constituted error under *Cunningham,* 549 U.S. at 288-89. However, failure to submit a sentencing factor to a jury is subject to harmless error

12

analysis. *See Butler v. Curry*, 528 F. 3d 624, 648 (9th Cir. 2008). In federal habeas proceedings, the court must determine whether the error had a substantial and injurious effect on petitioner's sentence under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001). Applying this standard the court must grant relief if there is "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. *See O'Neal v. McAninch*, 513 U.S. 432, 434, 445 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 434.

At sentencing, the trial court heard argument from counsel and testimony from petitioner, his brother, and Theresa C. Resp. Exh. B2 at 417-448. The court was presented with extensive evidence that the victims endured ongoing and repeated instances of sexual abuse at the hands of petitioner. *Id.* at 448. It was uncontested that petitioner acted as a surrogate father for the three victims in that he provided significant financial support for the victims and their mother, and the trial court concluded that petitioner abused their trust in "one of the worst ways imaginable." *Id.* at 456. Based on the evidence that was presented at trial and at the sentencing hearing, the *Cunningham* error is harmless because there is virtually no doubt, let alone grave doubt, that a jury would have concluded beyond a reasonable doubt that petitioner abused a position of trust with respect to the three victims. *See Butler*, 528 F.3d at 643, 648–49.

**IV.   Ineffective Assistance of Counsel**

Petitioner contends that his trial counsel was ineffective at sentencing for (i) failing to draw the court's attention to its prior findings of mitigating factors; (ii) failing to insist that the court state its reasons for imposing consecutive terms; and (iii) failing to object to the court's finding that petitioner had the ability to pay fines and restitution. Hab. Pet. at 65. Petioner also contends that trial counsel was ineffective at both the preliminary hearing and the trial for failing to object to the admission of the pretext call. Hab. Pet. 24. He finally contends that his appellate counsel was ineffective for failing adequately to raise the

foregoing issues on appeal. Hab. Pet. 19, 24, 32, 45.

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Again, because the California Supreme Court summarily denied the petition with no explanation, this court must conduct an independent review of the record to determine whether its decision denying petitioner's claim of ineffective assistance of counsel is objectively unreasonable. *See Delgado*, 223 F.3d at 982.

### a. Sentencing

At the original sentencing hearing the defense submitted a "statement in mitigation and sentencing with proposed sentencing alternatives." Resp. Exh. B2 at 456. The court considered the statement, and also noted that petitioner had led a productive life and that numerous letters of support were submitted on his behalf. *Id.* at 456-57. The court sentenced petitioner to eleven consecutive terms of fifteen years to life, and ordered him to pay a restitution fine of $10,000, while suspending payment on an identical restitution fine. *Id.* at 457. At the second resentencing, the court began by announcing a tentative decision to sentence petitioner to a total term of 28 years. Resp. Exh. B3 at 55. The court went on to find that petitioner's lack of a prior record was a mitigating factor, but determined that the aggravating factors outweighed the mitigating ones. Resp. Exh. B3 at 57, 60. The court sentenced petitioner to a total term of 28 years, consisting of 8 years on count one,

1 followed by consecutive term of 2 years on each of the remaining ten counts, and reduced
2 his restitution fine from $10,000 to $5,000. *Id.* at 60-61.

3   Petitioner claims that counsel was ineffective for not raising the prior mitigating
4 factors relied on by the trial court at the original sentencing proceeding, and for failing to
5 produce an updated pleading in mitigation. Hab. Pet. 68. Petitioner's claim lacks merit as
6 the record reflects that the court was aware of the mitigating factors in the case, but simply
7 concluded that the aggravating factors outweighed the mitigating ones. Resp. Exh. B3 at
8 57, 60. However, even assuming that counsel's failure to highlight the mitigating factors for
9 the court's benefit constitutes deficient performance, petitioner fails to show a reasonable
10 probability that the result of the proceeding would have been different had he done so. *See*
11 *Strickland*, 466 U.S. at 694. Considering the facts of this case, particularly the original
12 sentence imposed, it is highly unlikely, let alone reasonably probable, that petitioner would
13 have received a more favorable result had counsel produced an updated pleading that
14 refreshed the court's recollection regarding the mitigating factors it relied on at the original
15 sentencing.

16   Petitioner also contends that counsel was ineffective for failing to request that the
17 court state its reasons for imposing consecutive sentences. Hab. Pet. 72. The trial court
18 did not abuse its discretion by imposing consecutive sentences. *See* Cal. Rules of Court,
19 Rule 4.425. In any case, petitioner fails to demonstrate a reasonable possibility of a better
20 result had his counsel requested a statement of reasons justifying the imposition of
21 consecutive sentences. *See Strickland*, 466 U.S. at 694.

22   Petitioner's claim regarding trial counsel's failure to object to restitution does not
23 constitute deficient performance because California law requires the court to impose a
24 restitution fine unless it finds a compelling and extraordinary reason not to do so. *See* Cal.
25 Penal Code § 1202.4(b). A defendant's inability to pay is not a compelling and
26 extraordinary reason not to impose a restitution fine. *Id.* "Failure to raise a meritless
27 argument does not constitute ineffective assistance." *See Moormann v. Ryan*, 628 F.3d
28 1102, 1109-10 (9th Cir. 2010) *quoting Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).

### b.    Preliminary Hearing/Trial

Petitioner was represented by different attorneys at the preliminary hearing and the trial, and contends that both were ineffective for failing to object to the admission of the audiotape of the pretext call on the basis that it was not properly authenticated. Hab. Pet. 24. Petitioner argues that Deputy Freese could only hear Theresa C's side of the conversation and therefore lacked personal knowledge to authenticate the contents of the entire recording. Hab. Pet. 28. Even though Deputy Freese heard only one side of the conversation, under California law his testimony was sufficient to authenticate the recording so long as he could identify the tape as the same one on which he recorded the conversation, and could testify that it was a complete recording of the conversation. *See People v. Estrada*, 93 Cal. App. 3d 76, 100 (Cal. App.1. Dist. 1979); *see also* California Evidence Code §§ 250, 1413. Moreover, the recording was admissible notwithstanding the interruption in the tape when it was being turned over, as there was no showing that material statements were missing from the conversation. Thus, any objection raised by counsel would have been futile, therefore counsel's failure to raise the argument does not constitute ineffective assistance. *See Moormann,* 628 F.3d at 1109-10 (citation omitted).

### c.    Appellate Counsel

Throughout his petition, petitioner argues that appellate counsel was ineffective for failing adequately to raise the foregoing issues on appeal. Hab. Pet. 19, 24, 32, 45.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Id.* at 751-52.

For the reasons discussed, *supra*, petitioner was not denied the effective of assistance of counsel during trial. Because the claims raised by petitioner lack merit, appellate counsel's failure to raise them on appeal was neither deficient nor prejudicial under the *Strickland* standard. *See Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011). Consequently, petitioner did not receive ineffective assistance of counsel on appeal. The state court's decision denying relief on this claim was not objectively unreasonable.

### d. Conclusion

Based on the court's independent review of the record, the California Supreme Court's decision denying petitioner's claims of ineffective assistance of counsel was not objectively unreasonable. *See Delgado*, 223 F.3d at 982.

## V. Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that two issues presented by petitioner in his petition meet the above standard and accordingly GRANTS the COA as to those issues. *See generally Miller-El*, 537 U.S. at 322.
The issues are:

(1) whether the trial court improperly admitted an audiotape of petitioner's confession because the confession was coerced through an implied promise of leniency,

17

and;

(2) whether petitioner was entitled to a testimonial hearing to determine the admissibility of his confession.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 13, 2013.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.09\HISCOX3477.HC.wpd